Ephraim L. Beasley *v.* New Orleans & Northeastern Railroad Company.

[45 South., 864.]

1. Justice of the Peace. *Certiorari.   Amendment.*

A petition for certiorari, predicating the right to the writ of designated alleged errors of the justice of the peace court, may be amended in the circuit court so as to make an additional error the basis of the demand for the writ.

2 . Same.—*Action of tort.   Judgment by default.   Writ of inquiry.*

A justice of the peace should not, upon the failure of a defendant to appear and defend in an action sounding in tort, render a judgment for a sum in gross, without evidence showing the extent of damages sustained by the plaintiff, but should award a writ of enquiry.

3. Railroads. *Live stock.   Failure to fence track.*

The laws not requiring a railroad company to fence its right of way or tracks, a recovery of damages for live stock killed on the track cannot be predicated alone of the fact that defendant's fence was insecure.

4. Same. *Negligence.*

Where live stock strayed upon a railroad track and were killed by a train running at a lawful rate of speed, the railroad company

is not liable therefor in the absence of negligence on the part of its employes in charge of the train.

FROM the circuit court of, second district, Perry county.

HON. WILLIAM H. COOK, Judge.

Beasley, appellant, was plaintiff in the court below; the railroad company, appellee, was defendant there. From a judgment in defendant's favor predicated of a peremptory instruction the plaintiff appealed to the supreme court.

The suit was begun in the court of a justice of the peace and was an action of tort for the wrongful killing of cattle; the defendant failed to appear therein and the justice of the peace gave judgment for the full sum demanded in plaintiff's favor without hearing evidence touching the *quantum* of damages sustained by the plaintiff. The defendant failed to appeal within the five days allowed by the statute for so doing, but brought the case by *certiorari* to the circuit court and there by leave of court amended its petition for *certiorari* as shown in the opinion of the supreme court.

Beasley purchased seventy head of cattle on the day before the killing, drove them to Heidelberg and put them in a pasture on the side of the railroad track, the owner using the railroad company's wire fence as a part of his pasture fence without obtaining right to do so from the railroad company. During the night this railroad fence, never intended for a cattle pen, was run over and mashed down, the posts breaking at the ground and the cattle escaped. Twelve or more of them went upon the railroad track at a point a quarter of a mile from the Heidelberg depot, some of them lay down and others stood thereon, all being near each other. At the point in question there was a curve and a down grade to the south in the track. A freight train going south, running at a rapid but lawful rate, came upon the curve, with the electric light falling of course straight ahead and not upon the curved track, the engineer being on the lookout, when the cattle were suddenly seen; he did everything in his power to prevent the accident, reversed

the engine, put on the brakes, sounded the alarm and did all that could have been done to stop the train before it struck the animals. In spite of his best efforts the engine struck the cattle and eleven of them were killed.

The place of the killing was not shown to be within an incorporated municipality; the testimony on the subject was that the cattle were killed three or four hundred yards north of the Heidelberg depot; it was not shown that Heidelberg was incorporated, nor were its limits in any way made known.

*J. T. Garraway,* for appellant.

The court below erred in granting the appellee a peremptory instruction. The testimony for the railroad company was inconsistent and conflicting and the jury should have been permitted to determine whether or not there was negligence.

It was negligence on the part of the railroad company to run its train in the night time at such a rate of speed as to make it impossible by ordinary means and appliances to stop the train, and prevent injury to stock on the track within the distance in which stock could be seen by the aid of the headlight. *Louisville, etc., R. R. Co.* v. *Kelton,* 21 South., 819.

The company was guilty of negligence because it ran the train at a high rate of speed, having its track wired and depending on the fence to keep stock out, when the fence was in a defective condition and permitted stock to go through, and get on the track.

The company cannot escape negligence since the uncontradicted testimony shows that the killing took place in the town of Heidelberg, not over three or four hundred yards from the depot and while it was not brought out by testimony whether or not the town was incorporated this court will take judicial cognizance of the fact, and certainly the railroad company should not have run a train through the town, where there were crossings, and so near a depot at such a rate of speed as to kill so large a number of cattle.

Proof of an animal being killed at night time at a railroad crossing by an engine establishes a *prima facie* case of negligence or want of reasonable care, and the burden is on the company. *Young* v. *Illinois, etc., R. R. Co.,* 40 South., 860.

The court below erred in permitting the defendant to amend the *certiorari* petition so as to bring in altogether new matter, without which it would have had no standing in court, and therefore should have sustained the plaintiff's motion to dismiss the *certiorari* petition, and should have granted a new trial.

*Bozeman & Fewell,* and *McWillie & Thompson,* for appellee.

The only testimony with reference to the incorporation of Heidelberg was the testimony of defendant's witness Baggett, who stated that he did not know whether the town was incorporated or not; that it had been incorporated at one time but the incorporation was " knocked out " in some way.

There is no statute in the state of Mississippi requiring a railroad company to fence its tracks. There is absolutely no law forbidding a railroad company running its trains in the country at any rate of speed it sees fit, and the argument of counsel for appellant touching these matters is utterly inapplicable to the facts in this case.

Counsel also argue that there was a crossing near where the live stock in question was killed but there is absolutely no proof, no evidence in the record, which shows or tends to show the existence of a crossing near the place where the cows were killed.

The testimony of the engineer, which is uncontradicted, brought the case squarely within the authorities justifying a peremptory instruction in favor of the railroad company. *Illinois, etc., R. R. Co.* v. *Walker,* 63 Miss., 13; *Mobile, etc., R. R. Co.* v. *Bourgeois,* 66 Miss., 3; *Yazoo, etc., R. R. Co.* v. *Whittington,* 74 Miss., 410; *Alabama, etc., Ry. Co.* v. *Stacey,* 35 South., 137.

CALHOON, J., delivered the opinion of the court.

The first writ of *certiorari* in this case was based on the ground that a judgment by default had been taken in the justice's court before five days from service of process had elapsed before the trial. It was perfectly competent to amend the petition in the circuit court by adding the ground for the issuance of the writ that the judgment in the justice's court had been taken for a sum in gross for the killing of the cattle, without taking testimony to show value. *Evans* v. *Railway Co.,* 74 Miss., 230, 21 South., 15; *Miss. Central R. R. Co.* v. *Fort,* 44 Miss., 423. Under the statute amendments are liberally awarded in the circuit court on appeals from justices' courts, and in the particular instance it is not possible that any harm could have resulted.

On this record nothing can be predicated of the insecure wire fence of the railroad company on the right of way, through which fence the cattle got that were killed, because no law requires such fence. We look in vain in the record for any proof showing, with any sort of satisfaction, that the killing was done in any incorporated town. The facts are that Beasley had bought about seventy head of cattle, which he put in a pasture belonging to one Ellis on the side of the railroad track. On the side of the railroad company's right of way there was no inclosure to the pasture other than that of the railroad company's right of way wire fence. During the night, it seems, some of the cattle got through this wire fence and went upon the railroad track, where some of them were lying down and some standing up. At that point there was a curve and a downgrade. A freight train, running at a lawful rate, came upon the curve, on which curve, of course, the headlight was shed straight ahead. This action is to recover damages for killing some of that stock, on the idea that the killing by the locomotive made a *prima facie* case of negligence on the part of the railroad company. Granting this, it is none the less true that the railway company may exonerate itself by showing that there was

in fact no negligence.   This, we think, has been done by the uncontradicted testimony for the company, under the authorities in Mississippi — *Illinois Cent. R. Co.* v. *Walker,* 63 Miss., 13; *Southern Ry. Co.* v. *Murry,* 39 South., 478; *Yazoo & M. V. R. Co.* v. *Whittington,* 74 Miss., 410; 21 South., 249; *New Orleans & N. E. R. Co.* v. *Bourgeois,* 66 Miss., 3; 5 South., 629; 14 Am. St. Rep., 534; *Alabama & V. Ry. Co.* v. *Stacy,* 35 South., 137 — cited by counsel, and we think the peremptory instruction to find for the railway company was proper.

*Affirmed.*